1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8  BOARDS OF TRUSTEES OF THE
   LOCALS 302 AND 612 OF THE
9  INTERNATIONAL UNION OF
   OPERATING ENGINEERS
10 CONSTRUCTION INDUSTRY HEALTH
   AND SECURITY FUND, et al.,
11
                    Plaintiffs,
12
         v.
13
   BARRY CIVIL CONSTRUCTION, INC., et
14 al.,
15                  Defendants.

CASE NO. 2:21-cv-00209-JHC

ORDER GRANTING PLAINTIFFS'
MOTION FOR DEFAULT JUDGMENT

16
17
18
19
20
21
22
23
24

## I.

### INTRODUCTION

This matter comes before the Court on Plaintiffs Boards of Trustees of the Locals 302

and 612 of the International Union of Operating Engineers Construction Industry Health and

Security Fund, Locals 302 and 612 of the International Union of Operating Engineers-Employers

Construction Industry Retirement Fund, and Western Washington Operating Engineers-

Employers Training Trust Fund's (collectively "Trust Funds") Motion for Default Judgment

against Defendants Barry Civil Construction, Inc. (BCCI), Stephany Sturrock, Robert Barry, and

Brian Berry. *See* Dkt. #19. The motion is unopposed. *See generally* Dkt. The Court has considered the motion, the record, and the applicable law. Being fully advised, the Court GRANTS the motion.

## II.

### BACKGROUND

In 2010, Defendant BCCI, a construction employer, entered a collective bargaining agreement (CBA) with Locals 302 and 612 of the International Union of Operating Engineers, a labor organization. Dkt. #1 at 7–8. The CBA incorporates the terms and conditions of the Trust Agreements that govern Defendants Trust Funds. *Id.* at 7. The CBA requires BCCI to pay employee benefit contributions to the Trust Funds. *Id.* at 2–3.

In March 2015, BCCI entered a Settlement Agreement (2015 Settlement) with the Trust Funds. Dkt. #1 at 10–12. The President of BCCI, Defendant Stephany Sturrock, executed the Agreement on behalf of the company. *Id.* Per the terms of the 2015 Settlement, BCCI committed to paying the Trust Funds $481,364.71, which is the amount BCCI owed for delinquent contribution payments between May 2014 and February 2015, and 12% annual interest on the declining balance. *Id.* Defendants Stephany Sturrock, Robert Barry, and Brian Barry each personally guaranteed this payment in a signed agreement. Dkt. #1 at 14. BCCI paid only $119,187.64 of the amount owed under the 2015 Settlement. *Id.* at 4.

In October 2017, BCCI entered a second settlement agreement (2017 Settlement), promising to pay the Trust Funds $499,039.26[1] plus 12% annual interest on the declining

---

[1] This amount includes all remaining unpaid contributions in the 2015 Agreement, additional unpaid contributions until May 2017, interest, dues, liquidated damages, audit fees, attorney fees, and costs. *See* Dkt. #1 at 28.

balance until full payment.  Dkt. #1 at 20–30.  The 2017 Settlement includes new Personal

Guaranty agreements for this amount signed by Defendants Stephany Sturrock, Robert Barry,

and Brian Barry.  Dkt. #1 at 23–25.  To date, BCCI has paid only $40,000.00 of this amount, and

it stopped submitting payments in July 2018.  Dkt. #1 at 4; Dkt. #21 at 6, 12.

Plaintiffs filed their Complaint in February 2021 and served the Defendants.  Dkt. #1;

Dkt. #5–8.  They bring this action under the Employee Retirement Income Security Act of 1974,

29 U.S.C. § 1001 (ERISA), and claim that Defendants breached the CBA and settlement

agreements.  Dkt. #1 at 1–3.  In November 2021, the Court entered a Clerk's Order of Default

against all Defendants for failure to appear.  Dkt. #18; *see* Fed. R. Civ. P. 55(a).  In August 2022,

Plaintiffs brought this Motion for Default Judgment in the amount of $688,684.70, including:

(1) $459,039.26 for the remaining balance on the 2017 Settlement;

(2) $224,715.44 in declining interest on the unpaid balance owed for the 2017
Settlement;

(3) $4,015.00 in attorney fees; and

(4) $915.00 in litigation costs

Dkt. #19 at 8–9.

### III.

### DISCUSSION

A.  Legal Standard

If a defendant fails to plead or otherwise defend, the clerk enters the party's default.  Fed.

R. Civ. P. 55(a).  Then, upon a plaintiff's request or motion, the court may grant default

judgment for the plaintiff.  Fed. R. Civ. P. 55(b)(2); *see Aldabe v. Aldabe*, 616 F.2d 1089, 1092

(9th Cir. 1980).  On default judgment motions, "[t]he court must accept all well-pled allegations

ORDER GRANTING PLAINTIFFS' MOTION FOR
DEFAULT JUDGMENT - 3

of the complaint as established fact, except allegations related to the amount of damages." *UN4 Prods., Inc. v. Primozich*, 372 F. Supp. 3d 1129, 1133 (W.D. Wash. 2019) (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)).  Courts typically consider these factors for a determination of default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  Default judgments are generally disfavored, so "default judgment is appropriate only if the well-pleaded factual allegations of the complaint suffice to establish a plaintiff's entitlement to a judgment under the applicable law." *Dentist Ins. Co. v. Luke St. Marie Valley Dental Grp., P.L.L.C.*, CASE NO. 2:21-cv-01229-JHC, 2022 WL 1984124 (W.D. Wash. Jun. 6, 2022) (citing *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 855 (9th Cir. 2007)).

    B.  *Eitel* Factors

        1.  Prejudice to Plaintiffs

"[P]rejudice exists where the plaintiff has no recourse for recovery other than default judgment."  *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (citation and internal quotation marks omitted).  Defendants have failed to respond to this action, so default judgment is Plaintiffs' only means for recovery.  *See Eve Nevada, LLC v. Derbyshire*, CASE NO. 21-0251-LK, 2022 WL 279030 (W.D. Wash. Jan. 31, 2022); *Bd. of Trs. of U.A. Loc. No. 159 Health & Welfare Tr. Fund v. RT/DT, Inc.*, No. C 12-05111 JSW, 2013 WL 2237871, at *4 (N.D. Cal. May 21, 2013) ("Because ERISA provides that federal courts have exclusive

1    jurisdiction for claims of this nature, denial of Plaintiffs' Motion would leave them without a

2    remedy.").  Thus, this factor supports default judgment.

3              2.   Merits of Plaintiffs' claims and Sufficiency of Complaint

4        "Courts often consider the second and third *Eitel* factors together."  *Developers Sur. and*

5    *Indem. Co. v. View Point Builders, Inc.*, CASE NO. C20-0221JLR, 2020 WL 3303046, at *5

6    (W.D. Wash. Jun. 17, 2022).  Plaintiffs claim that Defendants breached the CBA, Trust

7    Agreements, Settlement Agreements, and Personal Guaranties because they failed to pay

8    delinquent employee contributions.  Dkt. #1 at 2–5.  Under Section 515 of ERISA, employers

9    must pay contributions that are required "under the terms of the plan or under the terms of a

10   collectively bargained agreement."  29 U.S.C. § 1145.  Section 502(g) of ERISA states,

11
12       In any action under this subchapter by a fiduciary for or on behalf of a plan to
         enforce [Section 515] in which a judgment in favor of the plan is awarded, the
13       court shall award the plan-

14          (A) the unpaid contributions
            (B) interest on the unpaid contributions
15          (C) an amount equal to the great of
                 (i)  interest on the unpaid contributions, or
16               (ii) liquidated damages provided for under the plan in an amount not in
                     excess of 20% . . .
17          (D) reasonable attorney's fees and costs of the action, to be paid by the
                defendant, and
18          (E) such other legal or equitable relief as the court deems appropriate.

19   29 U.S.C. § 1132(g)(2).

20
21       Plaintiffs cite unambiguous terms in the 2017 Settlement and Personal Guaranties

22   outlining Defendants' liability for $499,039.26 and 12% interest on the declining balance.  Dkt.

23   #1 at 20–30.  The Plaintiffs also submit a declaration with the terms of the Trust Agreements

24   incorporated into the CBA, which provide for recovery of outstanding contribution payments

ORDER GRANTING PLAINTIFFS' MOTION FOR
DEFAULT JUDGMENT - 5

plus 12% interest and liquidated damages. Dkt. #20 at 39, 101. Accepting their allegations of nonpayment as true, Plaintiffs present enough facts to show a contract breach claim is plausible and Defendants are liable for their failure to pay contributions and delinquent payments under ERISA. Thus, the second and third *Eitel* factors weigh in favor of Plaintiffs.

### 3.   Sum of money at stake

This factor "considers whether the amount of money requested is proportional to the harm caused." *Sun Life Assurance Co. of Canada v. Estate of Wheeler*, CASE NO. C19-0364JLR, 2020 WL 433352, at *4 (W.D. Wash. Jan. 28, 2020). Plaintiffs request $688,684.70 on default judgment. Dkt. #19 at 8. Except for attorney fees and costs of litigation, the amount requested is accounted for in the CBA and Settlement Agreements. *See* Dkt. #1 at 20–30. And the total amount is covered under Section 502 of ERISA, which provides for damages on unpaid contributions, interest on those contributions, attorney fees, and litigation costs. 29 U.S.C. § 1132(g)(2). Thus, though the sum Plaintiffs request is significant, it is proportional to their claim, and the fourth *Eitel* factor supports default judgment. *See Bd. of Trs. of U.A. Loc. No. 159 Health & Welfare Tr. Fund v. RT/DT, Inc.*, No. C 12-05111 JSW, 2013 WL 2237871, at *4 (N.D. Cal. May 21, 2013).

### 4.   Possibility of dispute over material facts

There is no sign that the material facts are in dispute. "The general rule of law is that upon default the factual allegations of the complaint, except those relating to damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Defendants did not appear, so the Clerk correctly entered default against them. *See* Dkt. #18. Additionally, where a "Defendant's obligations under the collective bargaining agreement are clear, the possibility for any factual disputes is unlikely." *Bd. of Trustees of U.A. Loc. No. 159 Health &*

ORDER GRANTING PLAINTIFFS' MOTION FOR
DEFAULT JUDGMENT - 6

*Welfare Tr. Fund v. RT/DT, Inc.*, No. C 12-05111 JSW, 2013 WL 2237871, at \*6 (N.D. Cal. May 21, 2013).  In this case, Defendants' obligations were outlined in several agreements, including the CBA and the 2017 Settlement, so this factor weighs in favor of Plaintiffs.

     5.   Probability that default was because of excusable neglect

The sixth *Eitel* factor assesses whether Defendants' default for failure to appear was because of excusable neglect.  *Boards of Trustees of Inland Empire Elec. Workers Welfare Tr. v. Excel Elec. Servs., Inc.*, No. 2:21-CV-00200-MKD, 2022 WL 1243663, at \*4 (E.D. Wash. Apr. 26, 2022).  Generally, courts do not find excusable neglect when defendants were properly served with the complaint.  *See, e.g.*, *Maersk Line v. Golden Harvest Alaska Seafood LLC*, No. C20-1140-JLR-MLP, 2020 WL 6083464, at \*4 (W.D. Wash. Sept. 30, 2020), *report and recommendation adopted*, No. C20-1140 JLR, 2020 WL 6077419 (W.D. Wash. Oct. 15, 2020). Plaintiffs establish that they did properly serve Defendants.  *See* Dkt. #5–8.  Notably, the current suit is not the first case that Plaintiffs have brought in which Defendants failed to appear.  *See Locs. 302 & 612 of Int'l Union of Operating Engineers Constr. Indus. Health & Sec. Fund v. Barry Civ. Constr. Inc.*, No. 2:19-CV-00800-BAT, 2021 WL 796270, at \*5 (W.D. Wash. Mar. 2, 2021).

     6.   Policy favoring decision on the merits

Generally, cases "should be decided upon their merits whenever reasonably possible," so courts disfavor default judgment on this factor.  *Eitel*, 782 F.2d at 1472.  But in this case, Defendants' failure to appear or respond "makes a decision on the merits impractical, if not impossible," so the Court is not precluded from granting default judgment.  *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)*; see also Empl. Painters' Trust v. Dahl*

*Constr. Servs., Inc.*, CASE NO. C19-1541-RSM, 2020 WL 3639591 (W.D. Wash. July 6, 2020). Thus, default judgment is an appropriate remedy in this case.

In sum, each *Eitel* factor supports default judgment.

C.  Damages Calculation

Because the Court does not accept the amount of claimed damages as true in a default judgment motion, it must assess whether Plaintiffs' claimed damages are appropriate to award. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).  The plaintiff has the burden of proving its requested damages are reasonable and supported by evidence.  *Bd. Of Trs. Of the Boilermaker Vacation Tr. v. Skelly, Inc.*, F. Supp. 2d 1222, 1226 (N.D. Cal. 2005).

Under Section 502(g) of ERISA, awards of liquidated damages, interest, attorney fees, and costs of litigation are required for successful claims of unpaid contributions brought by Trust Funds against employers. 29 U.S.C. § 1132(g)(2); *Northwest Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 258 (9th Cir. 1996).

1.  Unpaid Contributions and Interest

ERISA allows Trust Funds to recover unpaid contributions, and interest on those contributions, from employers.  29 U.S.C. § 1132(g)(2).  In this case, those two values constitute $683,754.70 of Plaintiffs' claimed damages.  Dkt. #1 at 9.  To arrive at that number, Plaintiffs first cite the 2017 Settlement—signed by Defendants—that includes a breakdown of the unpaid contributions, interest, and other costs due in October 2017, which was $499,039.26.  Dkt. #1 at 30.  Plaintiffs also cite the Trust Agreements,[2] as well as the 2017 Settlement, which reflect that

---

[2] These are provided in a declaration of the Data Controller of the Trust Fund Defendants.  *See* Dkt. #20.

ORDER GRANTING PLAINTIFFS' MOTION FOR
DEFAULT JUDGMENT - 8

1   BCCI must pay a 12% annual interest rate on whatever remains of the $499,039.26 until it is

2   paid in full.  Dkt. #20–30; Dkt. #20 at 3.  Defendants paid Plaintiffs $40,000 between October

3   2017 and July 2018, so the remaining amount owed from the 2017 Settlement is $459,039.26.

4   Plaintiffs provide an apparently accurate calculation of interest that accrued on that amount

5   between July 15, 2018, when Defendants stopped making payments, and August 2022, arriving

6   at $224,715.44.  Dkt. #21 at 12.

7          Plaintiffs have thus provided enough evidence to show a reasonable claim of $683,754.70

8   in unpaid contributions and interest.

9                 2.   Attorney Fees and Litigation Costs

10          Courts usually assess reasonable attorney fees using the "lodestar" calculation which

11   multiplies "the number of hours reasonably expended on the litigation" by "a reasonable hourly

12   rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

13

14          Plaintiffs request $4,015.00 in attorney fees.  Dkt. #1 at 9.  Plaintiffs' counsel has an

15   hourly rate of $275 and claims to have worked 14.60 hours on this case.  Dkt. #21 at 2.  This is a

16   reasonable rate for an ERISA attorney.  *See Empl. Painters' Trust v. Dahl Constr. Servs., Inc.*,

17   CASE NO. C19-1541-RSM, 2020 WL 3639591 (W.D. Wash. July 6, 2020) (citing several

18   ERISA cases in which district courts approved hourly rates greater than $300).  Plaintiffs'

19   counsel submits a thorough hourly billing record that details the tasks completed in each period

20   of time.  *See* Dkt. #21 at 14–15.  The Court finds nothing to suggest the number of billed hours is

21   unreasonable in this case.  Plaintiffs also list all litigation costs, which the Court finds

22   reasonable.  Dkt. #21 at 17.  Thus, the Court authorizes a default judgment of $4,015 for attorney

23   fees and $915 for litigation costs.

24

ORDER GRANTING PLAINTIFFS' MOTION FOR
DEFAULT JUDGMENT - 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**IV.**

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion for Default Judgment. Dkt. #19.  The Court further concludes that the amount of damages is reasonable and supported by the record, so it is ORDERED that Plaintiffs have a judgment to recover $688,684.70 from Defendants.

Dated this 6th day of December, 2022.

John H. Chun
United States District Judge

ORDER GRANTING PLAINTIFFS' MOTION FOR
DEFAULT JUDGMENT - 10